Clyde C. ROGERS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 193–84C.

United States Claims Court.

Dec. 10, 1984.

James Paul Green, San Francisco, Cal., for plaintiff.

Eileen P. Fennessy, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This contract case comes before the court on defendant's motion to dismiss and plaintiff's opposition thereto. Plaintiff herein is a disappointed bidder who seeks payment for the bid preparation expenses he incurred bidding on a contract that was awarded on February 10, 1978, by the General Services Administration (GSA). Subject contract encompassed the construction of improvements upon and the long-term lease of real property in San Francisco. Defendant contends that plaintiff's complaint, filed on April 16, 1984, is barred by the six-year statute of limitations. For the reasons set forth below, this court agrees with defendant's contention, and therefore grants its motion to dismiss.

## FACTS

On September 26, 1977, GSA issued Solicitation for Offers No. GS–09B–77468 for the lease of a U.S. government motor pool facility in San Francisco, for a 20-year period with two five-year options to renew. Plaintiff, and the successful bidder, Melvin J. Powers, submitted offers, in response to said solicitation, by the due date of October 21, 1977. However, the plaintiff submitted a revised bid on December 5, 1977, pursuant to a request of the GSA on November 25, 1977.

Plaintiff's initial offer on October 21, 1977, was for an average annual rental of $1.975 per square foot for the first 20 years and $1.627 for the subsequent five-year renewal terms. His revised offer, on December 5, 1977, was for an average annual rental of $2.20 per square foot initially and $1.85 per square foot on the renewals, and it also reflected a reduction in square footage of the facility offered. The facility offered by Powers had an average annual rental of $1.976 per square foot for both the initial 20-year lease and the two five-year renewal periods. On February 10, 1978, GSA awarded said contract, pursuant to the solicitation, to Melvin J. Powers.

Approximately one to two weeks after the announcement of the award, in February 1978, plaintiff met with the responsible GSA leasing specialist, who informed him that she assisted Powers (the successful bidder) in completing his bid form, *i.e.*, Form 1364. As a consequence thereof, plaintiff then filed a protest with the General Accounting Office (GAO) on April 17, 1978, alleging, *inter alia*, that his initial bid was improperly disclosed to Powers as a "target bid" prior to Powers' revised bid submission on December 13, 1977, "and that preferential treatment was afforded to the successful bidder to the great damage and detriment of [plaintiff]." In support thereof, plaintiff cited the foregoing admission of the GSA leasing specialist, and alleged that the price per square foot bid by Powers was "too close [to that of plaintiff's initial bid] to be a coincidence."

Under the GAO's procedural rules and regulations for the filing of a bid protest, 4 C.F.R. ¶ 20.2(b)(2) (1978), it is mandated that a bid protest "be filed not later than 10 days after the basis for protest is known or should have been known, whichever is earlier." Because plaintiff filed its GAO bid protest on April 17, 1978, and the contract award in question and the subsequent discussion with the GSA leasing specialist occurred on February 10, 1978 and approximately February 24, 1978, respectively, an issue arose as to whether plaintiff's protest was timely within the foregoing GAO regulations. However, in addressing this timeliness issue, prior to the GAO's opinion, plaintiff's counsel wrote several letters to the GAO addressing the timeliness issue to assure the GAO that plaintiff did not know the basis of his complaint *until April 12, 1978*, thereby making the April 17, 1978 protest timely under the applicable regulations, in that it was filed within 10 days of his knowledge of the basis for protest. In one such letter dated October 16, 1978, plaintiff's counsel stated that:

My client investigated the matters set forth in my letter to your office dated April 17, 1978 *through and inclusive of Wednesday, April 12, 1978. It was not until that time,* after much research on his part *and investigation into the factual matters, as it appeared to him and to the undersigned that a sound basis for the protest existed.* (Emphasis added.)

Following said letter, in an opinion dated November 27, 1978, the GAO denied plaintiff's protest of April 17, 1978. *See Clyde C. Rogers,* B–191744 (Comp.Gen. November 27, 1978). On the issue pertinent to subject litigation, the GAO held that plaintiff's protest would *not* be considered on its merits because it was filed more than ten days after he knew or should have known the basis for his allegations as required by the regulations governing GAO bid protest procedures. *Id.; see* 4 C.F.R. § 20.2(b)(2) (1978). Specifically, the GAO rejected plaintiff's contention that he did not know the basis for his protest until April 12, 1978, and found, conversely, that plaintiff knew of the allegedly improper conduct by GSA personnel—*i.e.,* the assistance given to Powers by the GSA leasing specialist in filling out Form 1364—as of the end of February 1978 at the latest. Thus, Rogers' GAO protest, filed on April 17, 1978, was "considerably in excess of 10 working days after [the] basis of the protest was known or should have been known."

After the rejection of his protest by the GAO, plaintiff filed, on January 10, 1980, a complaint against GSA and several of its officers in the United States District Court for the Northern District of California. He alleged therein that defendants "improperly, illegally, and otherwise favored" Powers by providing "inside information" to Powers, aided Powers in the preparation of his bid, and improperly utilized the bid of plaintiff to achieve such purposes. In an order issued March 31, 1981, Judge Marilyn Patel, of the district court, dismissed plaintiff's claim for want of jurisdiction, apparently holding that the claim was properly cognizable in our predecessor court, the Court of Claims, because it exceeded the $10,000 limit imposed by 28 U.S.C. § 1346. Subsequent to said dismissal, plaintiff took no further action on his claim until April

16, 1984, *i.e.*, more than three years thereafter, when he filed his complaint with this court.[1]

## DISCUSSION

The threshold issue raised by defendant from the foregoing is whether plaintiff's claim is barred by the six-year statute of limitations prescribed by 28 U.S.C. § 2501. Specifically, the plaintiff, in response to the defendant's motion to dismiss, argues several points, some of which are overlapping, that (1) his cause of action did not accrue until April 17, 1984, the day he filed his GAO bid protest; (2) certain reprehensible conduct on behalf of the defendant made plaintiff's claim inherently unknowable until a date that fell within six years prior to the filing of the Claims Court petition; (3) the GAO protest was a mandatory administrative remedy that tolled the statute of limitations; (4) he is partly proceeding under the Wunderlich Act which first required an agency decision; and (5) the statute of limitations was tolled in 1980 by his filing of a similar petition in the U.S. District Court.

■ The statute of limitations, 28 U.S.C. § 2501, provides, in pertinent part, as follows:

*Every claim* of which the United States Claims Court has jurisdiction *shall be barred unless the petition thereon is filed within six years after such claim first accrues.* (Emphasis added.)

We begin our analysis by observing that it is long settled that this statute of limitations is jurisdictional and must be strictly construed to avoid the prosecution of stale claims which can prejudice defendant. *See Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974), and the cases cited therein. Thus, on the operative facts

here, we conclude that this court lacks jurisdiction to entertain any claim asserted by plaintiff which accrued prior to April 16, 1978.

■ In furtherance of his position that the statute of limitations does not bar this action, plaintiff contends that his claim first accrued on April 17, 1978, the date of his protest to the GAO. This contention we reject, inasmuch as it runs afoul of the general proposition that:

A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.

*Oceanic Steamship Co. v. United States*, 165 Ct.Cl. 217, 225 (1964). *Accord L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1365 (Fed.Cir.1982).

■ In the instant case, the gravamen of plaintiff's complaint is that defendant, through its agents, *illegally* and surreptitiously communicated with a bidder while the solicitation was still outstanding, thus resulting unfairly in the award of subject contract to Powers. The genesis of such knowledge, plaintiff contends, did not come to his attention until approximately February 24, 1978, *supra*. Assuming arguendo that such allegation(s) are true, the government's liability would presumably stem solely from its breach of its implied contract to treat all bidders fairly and honestly. *See, e.g., Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 778, 428 F.2d 1233, 1236 (1970); *Heyer Products Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). As a general proposition then, at the earliest, such breach would have taken place on February 10, 1978, when the contract was awarded. Consequently, on that hypothesis, the commencement of the running of the statute of limitations was

---

**1.** Plaintiff's complaint here was filed pursuant to RUSCC 27. Against the defendant's strenuous objections, this court granted, on July 18, 1984, plaintiff's motion for leave to obtain RUSCC 27 discovery. On September 27, 1984, the court issued an order, requiring plaintiff to file any forthcoming RUSCC 27 amended complaint on or before October 15, 1984. Upon the

failure to receive such complaint by October 15, 1984, the court then issued another order on October 23, 1984, requiring the plaintiff to file an amended complaint, if he so desired, before the close of business on October 31, 1984, and further added that the failure to do so would be deemed to be a waiver. Plaintiff never filed such an amended complaint.

triggered at that time. *See Steel Improvement & Forge Co. v. United States*, 174 Ct.Cl. 24, 28–29, 355 F.2d 627, 630 (1966). The contract award date, February 10, 1978, was, of course, more than six years prior to the filing of plaintiff's complaint (*i.e.*, six years, two months, and six days) in this court.

In opposition to the foregoing, plaintiff contends that February 10, 1978 should not be considered to be the date his cause of action accrued because he was not then aware that any cause of action existed until he filed his protest with the GAO on April 17, 1978. Apparently, plaintiff here alleges that defendant fraudulently concealed the factual basis for plaintiff's cause of action from him until the filing of his protest with the GAO. Based on that argument, plaintiff contends that the statute of limitations must be tolled to a date in time when such operative facts became known to him. To invoke such a suspension, however, "[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Braude v. United States*, 218 Ct.Cl. 270, 273, 585 F.2d 1049, 1051 (1978), citing *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 634, 373 F.2d 356, 359 (1967), *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

Even if this court does assume that defendant at some point in time did fraudulently or otherwise conceal plaintiff's cause of action from him, we accept plaintiff's concession, through his counsel's letter to the GAO on October 16, 1978, that the information upon which his protest to the GAO was based was discovered in an investigation *completed on April 12, 1978*. While the GAO held, in its decision of November 27, 1978, that plaintiff knew or should have known the basis of his protest by the end of February 1978, the time plaintiff discovered that the GSA leasing specialist had assisted Powers in the preparation of his bid, we think the evidence is demonstrably more compelling, and we so find, that plaintiff knew of his cause of

action, at the very latest, on April 12, 1978. Comparatively, the factual basis of plaintiff's complaint here is not materially different than the factual basis alleged in the GAO protest. Hence, even construing plaintiff's pleadings most favorably to him, we find that his cause of action accrued prior to April 16, 1978 (*i.e.*, on April 12, 1978), which is more than six years from the filing date of his complaint in this court.

▮ Plaintiff further contends that since his GAO protest was a mandatory administrative remedy, it tolled the statute of limitations to the date (November 27, 1978) the GAO took final action. This contention is utterly devoid of merit and therefore requires short-shrift. Plaintiff's bid protest to the GAO was undeniably a permissive, rather than a mandatory remedy. Recourse to the GAO was *not* a prerequisite to a suit here. *See Friedman, et al. v. United States*, 159 Ct.Cl. 1, 8, 310 F.2d 381, 386 (1962); *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 875 (D.C.Cir.1970). It is only when pursuance of administrative remedies is a prerequisite to suit that the statute of limitations is suspended or tolled by such action. *Steel Improvement & Forge Co. v. United States*, 174 Ct.Cl. 24, 29, 355 F.2d 627, 631 (1966); *see also Soriano v. United States*, 352 U.S. 270, 275, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Gilmore v. United States*, 228 Ct.Cl. 829, 831 (1981); *Sohm v. United States*, 3 Cl.Ct. 74, 76 n. 1 (1983). This principle equally applies to claims brought before the GAO. *McQuown v. United States*, 199 Ct.Cl. 858, 873–74 (1972); *Withers v. United States*, 69 Ct.Cl. 584, 587 (1930).

▮ Moreover, plaintiff's attempt to characterize his complaint as a request for review of the GAO's "administrative" decision of November 27, 1978, pursuant to the Wunderlich Act, 41 U.S.C. § 321 *et seq.*, is equally devoid of merit and thus fatally deficient. The Wunderlich Act provides for judicial review of administrative decisions rendered pursuant to disputes arising under the disputes clause of a contract en-

tered into with the government. *See* 41 U.S.C. § 321; *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 710, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). The Act does not apply to an implied contract, such as that deemed implied in fact, between the government and bidders under a contract solicitation.

Finally, plaintiff asserts that the statute of limitations was tolled in 1980 by the filing of his petition in the U.S. District Court. Defendant forcefully opposes this contention, arguing that because that case was not transferred pursuant to 28 U.S.C. § 1406(c), but was dismissed on March 31, 1981, the litigation in the district court cannot toll the statute of limitations. Moreover, plaintiff permitted more than three years to pass after such dismissal before he filed his claim in this court.

◼ The court agrees with defendant's contention respecting plaintiff's final argument. Pursuant to 28 U.S.C. § 1406(c) (1976), the six-year statute of limitations that limits this court's jurisdiction, can be tolled *if* the suit was timely filed in and transferred from a court that lacked jurisdiction. This statute (§ 1406(c)), which, since the enactment of the Federal Courts Improvement Act of 1982, is found in 28 U.S.C. § 1631, in essentially similar form, provided that:

> If the case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, *if it be in the interest of justice, transfer* such case to the Court of Claims, *where the case shall proceed as if it had been filed in the Court of Claims on the date it was filed in the district court.* (Emphasis added.)

On March 31, 1981, Judge Patel, of the U.S. District Court for the Northern District of California, did not transfer plaintiff's case to the Court of Claims, but rather she

entered an order dismissing the complaint. It also does not appear that plaintiff ever moved to effect a transfer, under Rule 60(b) of the Federal Rules of Civil Procedure, in the three and one-half year period between the dissemination of Judge Patel's order and the filing of his complaint in the. instant case.[2] Thus, it appears clear that the prerequisite for the invocation of 28 U.S.C. § 1406(c) has not been met. Nevertheless, plaintiff argues that the statute of limitations should be deemed tolled by virtue of 28 U.S.C. § 1406(c). In that connection, he relies on a Court of Claims case, *Rothman v. United States*, 219 Ct.Cl. 595, 596–97 (1979). In *Rothman*, the plaintiff instituted an action in the predecessor Court of Claims shortly after his suit was dismissed in the district court (July 6, 1977 and April 15, 1977, respectively) for lack of jurisdiction, and arguably more than six years after his cause of action accrued. On such facts, the court held that the case was constructively transferred by the district court, even though no transfer on a motion for transfer was made.[3] The basis of the decision in *Rothman* was that inasmuch as only a *short* time remained in the limitations period for plaintiff to file a new action, the Court of Claims was "reluctan[t] to bar plaintiff entirely [from suing] because of its technical failure to come to the court by the correct route." *Id.* at 597.

◼ This court views the factual circumstances here to be markedly distinguishable from those in *Rothman*, primarily because of the inexcusable length of time plaintiff allowed to lapse without taking any action between the decision of the district court and the filing of his petition here, *i.e.*, more than three years. Hence, we are compelled to hold that the doctrine of constructive transfer espoused in *Rothman, supra*, is not applicable to the facts at bar, and plaintiff's cause of action is therefore barred by 28 U.S.C. § 2501, in

**2.** Although there was discussion between the parties about entering into a joint stipulation to transfer the district court action to the then Court of Claims, no such stipulation was formally executed.

**3.** This was actually the court's second alternative ground for denial of defendant's statute of limitations argument. The first alternative ground was that the record did not show that plaintiff's cause of action accrued more than six years prior to the filing of his petition.

that it comes within no recognizable exception to the rule.

## CONCLUSION

For the foregoing reasons, the Clerk shall dismiss the plaintiff's complaint.

IT IS SO ORDERED.