PAULINE NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent from the court’s ruling that the statute of limitations started to accrue from a date before the Caldwell property was “taken” in Fifth Amendment terms. All authority is contrary to this position.
Neither the dates of the Interstate Commerce Commission’s authorization to the Norfolk Southern Railroad to abandon railroad use and negotiate transfer of the easement (the ICC’s Notices of Intent to Use, whose dates of August 31, 1994 and June 2, 1995 are selected by the panel majority as the dates on which the statute of limitations started to accrue), nor the date the City of Columbus notified the ICC of the intended trail use (the date of July 5, 1996 chosen by the Court of Federal Claims) was an actionable taking of property. Neither event vested a cause of action in the owner of the fee, for neither event was a ripened taking. Neither the federal approval to discontinue railway operations, nor the ongoing negotiation between the railway and the city concerning conversion to trail use, vested a right of compensation by the United States. Thus neither of these events started accrual of the six-year period of limitations of 25 U.S.C. § 2501. See Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1481 (Fed.Cir.1994) (“a claim under the Fifth Amendment accrues when the taking action occurs”); Steel Improvement & Forge Co. v. United States, 174 Ct.Cl. 24, 355 F.2d 627, 631 (1966) (same).
A Fifth Amendment taking can indeed flow from a Trails Act conversion of a railway easement. See Preseault v. United States, 100 F.3d 1525, 1553 (Fed.Cir.1996) (en banc). However, these plaintiffs could not have prosecuted their claim until the taking occurred. The taking occurs “when all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action.” Seldovia Native Association, Inc. v. United States, 144 F.3d 769, 774 (Fed.Cir.1998). Until the easement was transferred to the City of Columbus, Norfolk Southern Railroad not only continued as owner of the right-of-way, but retained all of the benefits and obligations of ownership, including the right to exclude, the obligation to pay taxes, and liability for injury and liens. Until the right of trail use was vested in the City the cause of action had not ripened, and liability of the government for compensation was not fixed. Suit at this stage would have simply been premature; the statute of limitations can not start to accrue before suit could have been filed.
*1237 Under the Trails Act and its implementing regulations, not only must an “interim trail manager” (the City of Columbus) be approved by the ICC, but the interim trail manager must “assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way.” 16 U.S.C. § 1247(d) (1994). These obligations were not incurred until transfer of the deed at the legal Closing; until the Closing, the railroad continued to own the right-of-way, the City of Columbus did not possess and could not occupy the property, and the City could not convert it into a recreational trail. Until these events occurred the owners of the fee were not “clearly and permanently deprived,” and the liability of the government to pay compensation was not fixed. See Preseault v. Interstate Commerce Comm’n, 494 U.S. 1, 7-8, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (conversion to trail use may be subject to Tucker Act remedy for Fifth Amendment taking); Seldovia, 144 F.3d at 774 (“the key date for accrual purposes is the date on which Seldovia was clearly and permanently deprived of the lands it had selected”).
On October 9, 1996 the Norfolk Southern Railroad conveyed to the City of Columbus the deed for the 10.6 mile right-of-way. I cannot agree that the plaintiffs could have brought earlier suit and obtained compensation for this taking, based on the ICC’s authorizations on August 31, 1994 and June 2, 1995 to Norfolk Southern to negotiate a Trails Act conversion. These preliminary events did not fix a ripe takings claim. Negotiation of a possible future event may state a hope and a plan, but it is not a fixed, ripe, and compensable taking. The owners of the fee had no right to compensation based on or at the time of these authorizations to negotiate; thus these authorizations could not accrue the period of limitations.
Nor were the various negotiating documents involving the City of Columbus, starting with the document of August 17, 1995 styled “Purchase Agreement,” an actionable taking. This Agreement, from which the City could withdraw on five days’ notice, was amended on April 18, 1996 to add the Trails Act’s requirement that the manager accept financial and legal responsibility; this acceptance in turn was conditioned on completion of the transaction, and only then would become operable. Thus an Amendment to the Purchase Agreement stated that “at closing Buyer, its successor or assignee, shall assume full responsibility for the management of the right of way, for any legal liability arising out of its transfer or use, and for any payment of taxes in accordance with the requirements of section 8(d).” Another amendment dated July 1, 1996 provided that the City and the railroad would jointly request the ICC (now named the Surface Transportation Board) to extend the time period for negotiation of a “mutually acceptable interim trial use/railbanking agreement” through and including November 1, 1996. Thus the Agreement itself documented its own negotiating status; these documents could not have formed the basis of a takings action by July 5, 1996, as the Court of Federal Claims held in selecting the date when the City and the railway jointly requested the time extension for further negotiation. This Agreement and its amendments were recorda-tions of the negotiation, not a completed transaction having Fifth Amendment consequences.
Taking claims accrue when the liability of the government is fixed, not simply prospective. In Holland Band of Porno Indians v. United States, 855 F.2d 1573 (Fed.Cir.1988) the court reiterated that
*1238 for the purposes of section 2501, it would appear more accurate to state that a cause of action against the government has ‘first accrued’ only when all the events which fix the government’s alleged liability have occurred and the plaintiff was or should have been aware of their existence.
Id. at 1577. These events occurred when the City acquired the deed and the right to occupy and use the property. The Court explained in Nollan v. California Coastal Comm’n, 483 U.S. 825, 832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), that permanent physical occupation occurs “where persons are given a permanent and continuous right to pass to and fro.” That did not occur until the Closing, when the deed and the right of occupancy and use were transferred.[1] Before these events the period of limitations did not start to accrue, for neither the ICC’s Notice that permitted negotiation for trail use, nor the various documents implementing those negotiations, ripened a claim for compensation. Intentions are rarely actionable; it is the consummation that accrues legal rights.
The panel majority places great weight on United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). In Dow the Court held that a taking occurs upon possession and occupancy of the property, and that a subsequent filing under the Declaration of Taking Act did not negate the effect of the earlier possession and occupancy. Id. at 22, 78 S.Ct. 1039. In Dow the government in 1943, by eminent domain, obtained a judgment of “immediate possession” of a right-of-way through a larger tract of land, entered into immediate possession of the right-of-way, and within ten days began laying a pipeline through the tract. In 1945 the owners conveyed the entire tract to Dow, including their right to any compensation for the land taken by eminent domain; and in 1946 the government filed in court a declaration of taking, obtained title to the right-of-way, and deposited estimated compensation with the court. The issue was Dow’s rights under the Assignment of Claims Act; there was no issue of the running of a statute of limitations. The Court held that the taking occurred when the United States entered into possession in 1943, when the government “entered and appropriated the property to public use,” id. at 23, 78 S.Ct. 1039, and that the taking neither awaited the later transfer of title to the right-of-way, nor was negated by the later proceeding. The Court stressed that the determinative event of the taking was whether “the Government has already entered into possession.” Id. at 25, 78 S.Ct. 1039. This case well supports the plaintiffs herein.
It is not disputed that the City of Columbus did not possess and occupy the property, and had no authorization or right to do so, until the Closing and transfer of the deed. Although the panel majority relies heavily on Dow, the analogy is not apt. In Dow the government was in full possession of the property it had obtained by condemnation decree and was actively building the pipeline; thus the Court held that the taking had occurred. In contrast, the authorization from the ICC to the Railway and the City to start to negotiate did not change the possession and occupancy of the easement. My colleagues’ view that it is irrelevant when title passes does not mean that the property was earlier taken; that is not the rule of Dow. To the con *1239 trary, Dow strongly reinforces the position that the Norfolk Southern right-of-way was not taken and compensable until there was a transfer of possession and occupancy, an event that did not occur until the date of Closing and the transfer of the deed.
Thus I must, respectfully, dissent from the court’s conclusion that the statute of limitations started to accrue when the parties told the ICC that they were negotiating for the purpose of reaching a trail use agreement.

. It is not necessary to decide whether the date of accrual of the limitations period was the transfer of the deed at the Closing on October 9, 1996, or its recordation a few days later, or the Notification from the City of Columbus to the ICC on November 5, 1996, because this suit was filed within six years of the earliest of these dates.