Paul **HILKOVSKY**, et al.,

v.

The **UNITED STATES**.

Leland S. **MURPHY**, Sr.,

v.

The **UNITED STATES** (two cases).

Nos. 854–71, 856–71 and 857–71.

United States Court of Claims.

Oct. 23, 1974.

William J. Turner, San Francisco, Cal., for plaintiff. Jess S. Jackson, Jr., Burlingame, Cal., attorney of record.

David W. Miller, Washington, D. C., with whom was Asst. Atty. Gen., Wallace H. Johnson, for defendant.

Before DURFEE, Senior Judge, and NICHOLS and BENNETT, Judges.

### ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

On December 3, 1971, plaintiffs holding various interests in six tracts of land within the outer boundaries of the Point Reyes National Seashore in Marin County, California, north of San Francisco, filed suits alleging taking of these lands by the United States. Such suits are said to be for "inverse condemnation" as they differ from ordinary land condemnations wherein the Government is the plaintiff. Jurisdiction is based upon the Fifth Amendment just compensation clause and 28 U.S.C. § 1491. On appropriate motions the six cases were consolidated on August 17, 1972, and heard together by the court on cross motions for summary judgment as the liability for taking and, in the event that takings were found, on cross motions for summary judgment on liability for the use thereof by plaintiffs after such taking by the United States.

At oral argument in June 1974, counsel for plaintiffs announced the settlement of three of the suits, all involving the three neighboring tracts on the Inverness Ridge. The settled suits are No. 853–71, Brenner v. United States, No. 855–71, Mitchell v. United States, and No. 858–71, Williams v. United States. Stipulations of dismissal are on file in all three of those cases, showing that they are dismissed with prejudice in

view of the settlement of cases on file in the Northern District of California in which the United States condemned the corresponding parcels.

Still in dispute are the three small tracts enclosed by Tract 02–109, which is now owned by the United States and leased back to Leland S. Murphy, Sr., under a Special Use Permit for his cattle ranching. At the time plaintiff Murphy conveyed Tract 02–109 to the United States in exchange for other Government land near San Diego, he reserved the the tracts now in dispute from the deed for Tract 02–109. The first of the three disputed tracts is Tract 02–141, Home Ranch (owned by Drakes Bay Hereford Ranch, Inc., of which Leland S. Murphy, Sr., is sole owner), which houses the headquarters for plaintiff Murphy's ranch operations and which is split by the Murphy Ranch access road. Nearby Home Ranch is the second of the disputed tracts, Tract 02–142, Duck Club (owned by Hilkovsky, et al., with a reserved security interest in Leland S. Murphy, Sr.). Access to the Duck Club is by the Murphy Ranch road. The third tract in dispute is Tract 02–143, Sunset Beach, still owned directly by plaintiff Leland S. Murphy, Sr. Sunset Beach is the only waterfront property of the six tracts, fronting on the Estero De Limantour (Limantour estuary), which opens into Drakes Bay. Access is by way of Balboa Road which connects with the Murphy Ranch road. Defendant has suits in the United States District Court to condemn these tracts, but without any Declarations of Taking. 40 U.S.C. § 257 and § 258a.

The first issue is plaintiffs' reliance on collateral estoppel to establish United States' liability for taking, based upon Drakes Bay Land Co. v. United States, 424 F.2d 574, 191 Ct.Cl. 389 (1970); and the proceeding to determine amount of recovery, 459 F.2d 504, 198 Ct.Cl. 506, (1972). A reading of these decisions will show we recognized that Congress intended the normal situation to be that defendant would year by year use appropriated funds to purchase or condemn

lands within the National Seashore as laid out by Congress (16 U.S.C. § 459 c–1 (1970)) or else exchange Government land outside the area for desired land inside. The mere description of the intended National Seashore by meets and boundaries in the same statute did not effect a taking by itself. Landowners normally would have to wait for the Government to get around to them. We held the Government had overreached in the case of the *Drakes Bay Land Co.,* tract and incurred Fifth Amendment just compensation liability as of an earlier date than it had intended, because of a special combination of circumstances. Some were applicable to all landowners in the future National Seashore, but others were peculiar to that one tract.

■ The Supreme Court in Blonder-Tongue Laboratories v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), held, contrary to previous patent law, that a person may invoke collateral estoppel by a previous decision to which he was not a party in certain circumstances. These were that a patentee had sued for infringement but elicited a decision that its patent was invalid. This holding was held collateral estoppel against it in suits against other infringers, subject to certain qualifications. The collateral estoppel related to defects in an item of property necessarily the same in the prior and subsequent suits, the patent. Whether a like collateral estoppel could arise with respect to different items of property, *i. e.,* two or more tracts of land, and as a matter of offense, not defense, requires a change in the Federal law beyond the one the Supreme Court has made in *Blonder-Tongue.* We would hesitate to make it even if the case were better than it is in other respects. The law of the State is not relevant. *See, Blonder-Tongue,* fn. 12 at 324, 91 S.Ct. 1434.

■ Lower courts that have dealt with the problem of mutuality of estoppel have established other requirements

to be met before these courts have disregarded the lack of mutuality of estoppel. In Schwartz v. Public Administrator of the County of Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969), the New York Court of Appeals established two requirements: (1) Identity of issues in both trials; and (2) Full and fair contest of the issue in the prior litigation. In determining whether a full and fair contest had occurred, several factors were listed: a) size of the respective claims; b) limitations of the prior forum; c) use of initiative to fully litigate and appeal the prior litigation; d) competence and experience of counsel in the prior litigation; e) availability of new evidence; f) indications of a compromise verdict in the prior litigation; g) difference in law between suits; and h) foreseeability of future litigation in the prior suit. Additional factors annotated elsewhere (31 A.L.R.3d 1052–1054) include whether (i) party claiming estoppel uses it offensively or defensively; (ii) fairness to parties; (iii) the avoidance of anomalous results by the use of estoppel; (iv) the presence or absence of sound reasons to deny estoppel; (v) the nature of the issue as one tried to judge or jury; (vi) the relationship of the stranger to the estoppel to the party who established the issue in the prior litigation; and (vii) the need to end litigation.

In this case plaintiffs fail everybody's first test—identity of issue. By plaintiffs' own admissions at oral argument: A. different, non-adjoining tracts of land are involved; B. the alleged taking dates are different (1963 for *Drakes Bay Land Co.*, some unidentified subsequent date for plaintiffs' lands); C. the use of the lands are different (plaintiffs admit that it is uneconomical for them to subdivide their small plots of land, whereas in *Drakes Bay Land Co.*, we held that the Government taking resulted from defendant's deliberate interference with Drakes Bay Land Co. subdivision efforts); and D. the access road situation is significantly improved (plaintiffs now enjoy a Park Service public access road whereas in *Drakes Bay Land Co.*, blockage of public road access by defendant was a key factor in determining taking by the United States). Thus plaintiffs fail to meet the collateral estoppel requirements stated by *Blonder-Tongue* and *Schwartz* and by this court in United States v. Northern Paiute Nation, 490 F.2d 954, 203 Ct.Cl. 468 (1974).

■ Plaintiffs' claim of collateral estoppel based on *Drakes Bay Land Co.*, also fails because the six-year statute of limitations (28 U.S.C. § 2501) on the collateral estoppel theory started to run on the date of taking in *Drakes Bay Land Co.*, and had expired before plaintiffs filed their suits on December 3, 1971. United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), relied upon by plaintiffs to extend the statute of limitations, is not applicable to the facts of this case under the limitations on the *Dickinson* holding made by United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). Justice Harlan in the *Dow* case distinguished the flooding situation in *Dickinson* from other types of Government taking because, in the slow flooding situation in *Dickinson*, the full extent of the Government taking could not be known until the high water mark of the flooding had been reached. Here, because there has never been any doubt as to the Government intent to take the *full interest of plaintiffs in their land*, either by purchase, transfer, or condemnation, as directed by Congress, there is no reason to apply the *Dickinson* wait-and-see-how-much-is-taken rule. Neither party alleges that the Government was taking the plaintiffs' lands inch-by-inch, over several years as happened in *Dickinson*. Either the lands have been taken entirely or they have not been taken at all.

■ Even within the six-year period of the statute of limitations, December 3, 1965 to December 3, 1971, plaintiffs have failed to establish any taking of their lands. Defendant has shown and

plaintiffs have not denied that plaintiffs used and enjoyed their lands up to the filing of these suits in the same manner that they had always used and enjoyed these lands. Home Ranch always was the headquarters of plaintiff's ranching operations. Sunset Beach remains, as plaintiff long used it, a vacant piece of land used in plaintiff's cattle ranching operations. Finally, plaintiffs, who formed the Duck Club during the midst of the Government acquisition efforts, have not shown any direct Government interference with such use of the land. Plaintiffs' only complaint of Government taking is the length of time that the Government has been buying, trading for, or condemning theirs and others' lands within the boundaries of the National Seashore, but that is not enough.

Therefore, since the affidavits and depositions submitted in this case establish no material issue of fact for the period ending December 3, 1971, since plaintiffs have failed to prove specific facts required to establish a Government taking of their lands during the period between December 3, 1965 and December 3, 1971, since plaintiffs have incorrectly alleged collateral estoppel, and since the statute of limitations bars all claims of defendant's taking of plaintiffs' lands prior to December 3, 1965, summary judgment for defendant on the issue of liability for taking of plaintiffs' lands for the period ending December 3, 1971, is appropriate and will issue under Rule 101(f). Concomitantly, since the court finds no taking of plaintiffs' lands as alleged by plaintiffs, summary judgment will issue for plaintiffs on defendant's counterclaim for liability for the use of Government lands for the same period ending December 3, 1971. Judgment and dismissal of these cases are without prejudice to present or future condemnation or taking actions involving any or all of the same tracts of land, alleging dates of taking subsequent to December 3, 1971. The defendant's motion to dismiss is granted, and the petitions and counterclaims are dismissed.