OPINION

HEWITT, Judge.
Before the court is Defendant’s Motion to Dismiss Plaintiffs Second Amended Complaint and Memorandum in Support Thereof (Def.’s Mot.), Plaintiffs Response in Opposition to Defendant’s Motion to Dismiss Plaintiffs Second Amended Complaint (Pl.’s Resp.) and Defendant’s Reply Brief in Support of Its Motion to Dismiss Plaintiff Second Amended Complaint (Def.’s Reply). For the following reasons, defendant’s motion is GRANTED.
I. Background
Plaintiff Jane Patience Kemp alleges that the United States effected a temporary taking of her property by a 1980 Act of Congress that expanded the boundaries of the Rocky Mountain National Park (RMNP). [Second] Amended Complaint (Compl.) ¶ 1. Pursuant to an Act of December 22, 1980, Pub.L. No. 96-560, § 111(a), 94 Stat. 3265 (1980), the United States increased the size of the National Park “by acquiring property that belonged to private property owners, including approximately 29.55 acres of private property owned by [p]laintiff.” Id. Plaintiff complains that the United States “use[d] [p]laintiffs property for public [purposes]” from December 1980 until December 1999 when “[p]laintiff sold the property to a private third party.” Id. ¶¶ 10-11. Plaintiff states that, during the nineteen years of property use by the United States, she and her mother, “her predecessor-in-interest[,] ... retained title to the property ... and paid taxes associated with the property.” Id. *818 1113.[1] Plaintiff complains that she did not receive “any compensation” for the public use of her property. Id. ¶ 14.
Defendant has moved to dismiss plaintiffs second amended complaint. See Rule 12(b)(1) of the Court of Federal Claims (RCFC). Defendant argues that the court lacks jurisdiction to hear plaintiffs claim because the claim is time-barred. Def.’s Mot. at 1.
II. Discussion
A. Motion to Dismiss for Lack of Subject Matter Jurisdiction
1. Jurisdiction
The jurisdiction of the Court of Federal Claims is set forth in 28 U.S.C. § 1491, which states that “[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliq-uidated damages in cases not sounding in tort.” 28 U.S.C. § 1491(a)(1) (2000). The timeliness of an action also determines jurisdiction under 28 U.S.C. § 2501. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir.1998) (“burden of establishing jurisdiction, including jurisdictional timeliness, must be carried by [plaintiff in the underlying suit]”). “Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.” 28 U.S.C. § 2501 (2000). Section 2501 imposes a limitation on the jurisdiction of the Court such that the court lacks jurisdiction to hear time-barred claims. See Alder Terrace, 161 F.3d at 1377. “The 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government’s waiver of sovereign immunity and, as such, must be strictly construed.” Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed.Cir.1988).
2. Standard of Review
Dismissal of a claim for lack of subject matter jurisdiction is governed by Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. RCFC 12(b)(1). “The requirement that jurisdiction be established as a threshold matter ... is ‘inflexible and without exception.’” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). When considering a motion to dismiss for lack of jurisdiction, the court assumes that all well-pleaded facts alleged in the complaint are true and draws all reasonable inferences in favor of plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir.2000) (grant of motion to dismiss requires reviewing court to “accept all well-pleaded factual allegations as true and draw all reasonable inferences in [plaintiffs] favor”); Henke v. United States, 60 F.3d 795, 797 (Fed.Cir.1995) (in deciding motion to dismiss, court “obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiffs favor”). Plaintiff bears the burden of proving, by a preponderance of the evidence, that the court has jurisdiction to hear an alleged claim. Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1383 (Fed.Cir.2002) (citing Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 932 (9th Cir.1994) (“The burden of establishing federal jurisdiction falls on the party invoking [it].”)(quotations and citations omitted)); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988) (“[O]nce the [trial] court’s subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court’s jurisdiction.”).
*819 The court is mindful that a takings claim is not to be dismissed without careful consideration of possible bases for relief. In particular the court agrees with plaintiff that:
“[although according to case law, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence, (citation omitted), a complaint should not be dismissed ‘unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.’ ” [Bagwell v. United States, 21 Cl.Ct.] at 725, quoting Hamlet, 873 F.2d at 1416; see also Ewald v. United States, 14 Cl.Ct. 378, 382 (1988), quoting Juda v. United States, 6 Cl.Ct. 441, 450 (1984) (“Denial of a taking claim on the basis of the defense of limitations is warranted only when the facts alleged demonstrate conclusively that such a decision is required as a matter of law.”).
Pl.’s Resp. at 4-5.
3. Takings Claims: Physical v. Regulatory
Under the Fifth Amendment of the United States Constitution, private property cannot be taken “for public use, without just compensation.” U.S. Const, amend. V. There are two classes of takings cases, physical and regulatory. Yee v. City of Escondido, 503 U.S. 519, 522-23, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). An unwanted physical occupation of an individual’s property constitutes a physical taking. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 421, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). A permanent physical occupation is a taking per se, regardless of whether it serves the public interest. Id. at 426, 102 S.Ct. 3164; See also Kaiser Aetna v. United States, 444 U.S. 164, 179-80, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (“[W]e hold that the ‘right to exclude,’ so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation.”).
A regulatory taking, on the other hand, occurs “when a regulatory or administrative action places such burdens on the ownership of private property that essential elements of such ownership must be viewed as having been taken____” Hendler v. United States, 36 Fed.Cl. 574, 585 (1996), aff'd, 175 F.3d 1374 (Fed.Cir.1999). If a landowner has not lost all economically viable use of its property, the court will consider other factors such as the extent the regulations interfere with investment-backed expectations. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 n. 8, 112 S.Ct. 2886,120 L.Ed.2d 798 (1992); Pa. Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (“[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.”). When a taking is found, the court has essentially determined that a single private owner should not bear the entire burden of a state regulatory action in the public interest. Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). It is not a requirement that the property owner be excluded for a compensable regulatory taking to occur. Ridge Line, Inc. v. United States, 346 F.3d 1346, 1352 (Fed.Cir.2003). Three factors are typically considered in determining whether a regulatory action has deprived an owner of economically viable use of its property: the economic impact of the regulation, its interference with the plaintiffs investment-backed expectations, and the character of the government action. Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Appolo Fuels, Inc. v. United States, 381 F.3d 1338, 1349 (Fed.Cir.2004) (discussing three relevant factors that can be used to determine the reasonableness of investment-backed expectations: “(1) whether the plaintiff operated in a ‘highly regulated industry;’ (2) whether the plaintiff was aware of the problem that spawned the regulation at the time it purchased the allegedly taken property; and (3) whether the plaintiff could have ‘reasonably anticipated’ the possibility of such regulation in light of the ‘regulatory environment’ at the time of purchase.”).
4. Plaintiffs Claim Is For a Physical Taking
Plaintiff states that her claim is for a physical taking. Pl.’s Resp. at 7 (“The Federal *820 Government’s continuous physical use of the property for RMNP related purposes constitutes a physical taking for the public’s use.”). Plaintiff alleges that on December 22, 1980, the National Park Service (NPS) began to allow “the public to traverse and use the land without Ms. Kemp’s permission or acquiescence.” Id. at 2-3. Plaintiff also claims that the physical taking in question was temporary. Id. at 5 (“Applicable to this case is when a temporary takings claim for a physical invasion accrues.”).
The court agrees with plaintiff that her claim falls into the category of physical takings. Plaintiffs claim is therefore governed by the law of physical takings, rendering a regulatory takings analysis inapplicable. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg’l Planning, 535 U.S. 302, 323, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (“The longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private use, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a “regulatory taking,” and vice versa.”) (footnote omitted).
Plaintiff, however, relies on case law concerning temporary regulatory takings to support her claim for compensation. Pl.’s Resp. at 8-9. Plaintiff asserts that the statute of limitations on her claims begins to run only when the temporary taking has ended, citing Creppel v. United States, 41 F.3d 627, 632 (Fed.Cir.1994) (holding that the plaintiffs temporary takings claim accrued when the taking concluded upon issuance of the 1984 order to proceed with the original project). Unlike this case, however, Creppel involved a temporary regulatory taking. Id. at 631. In Creppel, a governmental order, later overturned, eliminated plaintiffs “expectation of land reclamation, causing the property’s value to plummet.” Id. at 632. The application of regulatory takings case law to the taking of Ms. Kemp’s property is misplaced. See Tahoe-Sierra Pres. Council, 535 U.S. at 323, 122 S.Ct. 1465.
Cases on physical takings hold that the statute of limitations begins to run when the United States comes into physical possession of the plaintiffs land. United States v. Dow, 357 U.S. 17, 21, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958) (holding that the government’s physical entry onto plaintiffs land to lay pipe constituted the occurrence of the taking, not the filing of the taking three years later). When the taking is effected by legislation, the taking accrues on the enactment of the legislation introducing the physical taking. Fallini v. United States, 56 F.3d 1378,1382-83 (Fed.Cir.1995) (holding that, in determining whether there has been a taking, the court looks to the date of the enactment of the statute requiring the Fallinis to provide water to wild horses). If a declaration of taking is filed by the government after the government has already taken physical possession of the property, the date of the taking is the date upon which the physical possession commenced and the owner was deprived of valuable property rights. Dow, 357 U.S. at 23, 78 S.Ct. 1039; See also Caldwell v. United States, 391 F.3d 1226, 1235 (Fed.Cir.2004) (holding that the Notice of Interim Trail Use marked the commencement of the government taking, not the later transfer of the easement by deed, because it halted “abandonment and the vesting of state law reversionary interests when issued”).
5. Takings Claims: Temporary v. Permanent
“[T]he concept of permanent physical occupation does not require that in every instance the occupation be exclusive, or continuous and uninterrupted.” Hendler v. United States, 952 F.2d 1364, 1377-79 (Fed. Cir.1991) (holding that an order from the EPA, giving itself and the State of California the right to install and operate wells on plaintiffs property, could constitute a permanent physical taking). The Hendler court stated that “such activity, even though temporally intermittent, is not ‘temporary.’ It is a taking of the plaintiffs right to exclude, for the duration of the period in which the wells are on the property and subject to the Government’s need to service them.” Id. at 1378. Whether a physical taking is permanent or temporary is irrelevant to the application of the statute of limitations because the accrual date is the same for both. Cald *821 well, 391 F.3d at 1234-35 (“It is not unusual that the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues.”).[2]
Temporary regulatory takings, a category of takings inapplicable here, generally arise in two circumstances: when the owner is “temporarily deprived ... of all or substantially all economically viable use of their property” or when there is “ ‘extraordinary delay in the regulatory process.” Walcek v. United States, 44 Fed.Cl. 462, 467-68 (1999) (finding no temporary taking because the requirement of applying for a permit did not deprive plaintiffs of all economic use of their property and a one-year delay is not considered to be “extraordinary”); Appolo, 381 F.3d at 1351 (“If the delay is extraordinary, the question of temporary regulatory takings liability is to be determined using the Penn Central factors. ”).
6. Plaintiffs Claim Is For a Permanent Physical Taking
Plaintiff alleges that the expansion of the National Park by congressional act “increased the park’s size by acquiring property that belonged to private property owners, including approximately 29.55 acres of [plaintiffs] property.” Compl. 111. Plaintiff states that “[u]pon the effective date of the Act, the United States utilized the property as its own and for public use as part of the [National Park].” Id.
The Act of Congress alleged to have effected the taking is Public Law No. 96-560, 94 Stat. 3265 (Dec. 22, 1980). Section 111(a) of Public Law No. 96-560 provides that “[t]he boundaries of Rocky Mountain National Park ... are revised as generally depicted on the map entitled ‘Boundary Adjustments, Rocky Mountain National Park____’All lands added or transferred by this Act to Rocky Mountain National Park ... shall be subject to the laws and regulations applicable to the appropriate National Park or National Forest.” Pub.L. No. 96-560. The effective date of this act was December 22,1980. Id.
Plaintiff asserts that her claim involves a temporary taking because she was deprived of the full use of her property for “a fixed period of time.” Pl.’s Resp. at 8. Plaintiff claims the fixed period began with the NPS’ physical occupation of her land in 1980 and ended when Ms. Kemp sold the property in 1999. Id. Like the plaintiff in Hendler, however, Ms. Kemp offers no evidence that public use of her property ceased upon its sale to a third party; and, even if the taking were assumed to have ended, the court could not, as a matter of law, view a nineteen year case as temporary. See Hendler, 952 F.2d at 1376 (“Nothing in the Government’s activities suggests that the wells were a momentary excursion shortly to be withdrawn, and thus little more than a trespass.”).
Plaintiff argues that the temporary taking must end before an owner can seek compensation, but that theory has been held invalid: even if the claim were properly viewed as a regulatory taking, the regulation that results in a taking does not have to cease for a finding of a temporary taking. Bass Enters. Prod. Co. v. United States, 133 F.3d 893, 895-96 (Fed.Cir.1998) (holding that the fact that at some future point the Government would decide whether to condemn the Bass lease did not rule out the possibility of a temporary taking); First English, 482 U.S. at 320, 107 S.Ct. 2378 (“It would require a considerable extension of [earlier Supreme Court] decisions to say that no compensable regulatory taking may occur until a challenged ordinance has ultimately been held invalid.”). Limiting its decision to situations in which a taking has already been determined, the Supreme Court, in First English, held that when an owner is deprived of all *822 use of their property by a temporary regulation, the Fifth Amendment requires payment for the value of the property taken during the existence of the regulation without having to wait for the regulation to be declared unconstitutional. Id. at 319, 107 S.Ct. 2378 (“Invalidation of the ordinance or its successor ordinance after [a] period of time [the government’s use of private property], though converting the taking into a ‘temporary’ one, is not a sufficient remedy to meet the demands of the Just Compensation Clause.”).
As plaintiff acknowledges, however, this case is a physical taking. Pl.’s Resp. at 7. The Court in Nollan v. California Coastal Commission stated that “where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed,” a permanent physical taking has occurred. 483 U.S. 825, 832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). Here, the taking accrued when the government legislation allowed RMNP to start using the land as its own and deprived Ms. Kemp of her right to exclude. See Hendler, 952 F.2d at 1374 (stating that the right to exclude is one of the most valuable rights of property ownership).
7. Other Possible Bases For Finding the Complaint Timely Filed
Although the authorities the court has cited indicate that Ms. Kemp’s claim is barred by the statute of limitations because it was not filed within six years of the date the claim first accrued, (December 22, 1980, the date on which the government expanded the boundaries of the National Park and began to use Ms. Kemp’s land), plaintiff asserts that the claim did not accrue until the temporary taking ended in 1999, when she sold her land to a third party. Pl.’s Resp. at 1-2. Plaintiffs argument resembles to some extent the argument of the plaintiff in United States v. Dickinson, although plaintiff does not cite the case in her brief. See United States v. Dickinson, 331 U.S. 745, 749, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947) (reasoning that plaintiffs claim did not accrue until the flooding had stabilized and damages could be certain). Ms. Kemp claims that the statute of limitations could not run until the temporary taking had “stabilized.” Pl.’s Resp. at 5, 9. Ms. Kemp argues that, until the property was sold, she had no way of knowing when the period as to which she was entitled to compensation would end. Pl.’s Resp. at 8, 10.
In Dickinson, the Supreme Court held that “a taking by a continuous process of physical events” does not accrue until the situation becomes stabilized. Dickinson, 331 U.S. at 749, 67 S.Ct. 1382 (concerning a governmentally-constructed dam that flooded and eroded the plaintiffs land over time, such that plaintiffs were unsure of the frequency of inundation and whether a permanent taking had in fact occurred). The court observed in Dickinson that, if a plaintiff is required to bring a suit within six years of the commencement of the taking, when damages are still compounding and uncertain, the plaintiff would risk inaccurate damages and “res judicata against recovering later for damage as yet uncertain.” Id. Although she does not cite to the case, Ms. Kemp appears to be alleging that her situation is analogous to that of the plaintiffs in Dickinson, and that her claim did not accrue until her situation stabilized and the amount of damages were certain. Pl.’s Resp. at 10. Ms. Kemp also appears to argue that “stabilization” occurred only when she sold her land to a third party. Pl.’s Resp. at 8,10.
Dickinson, however, has not been read to cover any circumstances clearly analogous to those of plaintiff. Cf Fallini, 56 F.3d at 1381-82 (holding that a takings claim against the United States was time-barred because plaintiffs were aware of the requirement to provide water to wild horses and the damages that resulted, though not “complete and fully calculable,” were nonetheless apparent enough to indicate that a taking had occurred); Hilkovsky v. United States, 205 Ct. Cl. 460, 504 F.2d 1112, 1114 (1974) (holding that an inverse condemnation suit was barred by the six-year statute of limitations: “because there has never been any doubt as to the Government intent to take the full interest of plaintiffs in their land, either by purchase, transfer, or condemnation, as directed by Congress, there is no reason to apply the *823 [.Dickinson ] wait-and-see-how-much-is-taken rule”).
Dickinson does not stand for the proposition that uncertainty of any kind will bar accrual of a claim. Fallini, 56 F.3d at 1382 (“[I]t is not necessary that the damages from the alleged taking be complete and fully calculable before the cause of action accrues.”). In Fallini, the Court of Appeals for the Federal Circuit held that each successive drink a horse took did not constitute a recurring action; the only action that constituted a taking was the original act requiring that the Fallinis provide water to all wild horses. Id. at 1383. Similarly, the crossing by each successive pedestrian of Ms. Kemp’s property does not constitute a recurring taking; only the original act 'permitting the public access is considered a compensable taking. See id. Furthermore, in United States v. Dow, the Supreme Court interpreted Dickinson as having a limited holding applying only to flooding. Dow, 357 U.S. at 27, 78 S.Ct. 1039 (“The expressly limited holding in [.Dickinson ] was that the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriated to public use.”). Just as the plaintiffs in Fallini and Dow were held to have been well aware that horses were drinking their water (Falli-ni) and that the government had entered into physical possession of their property {Dow), Ms. Kemp was well aware that the government had taken her land in 1980 when RMNP allowed the public to traverse it. Compl. Hit 10-11; Fallini, 56 F.3d at 1382; Dow, 357 U.S. at 27, 78 S.Ct. 1039.
“A claim accrues when all the events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action.” Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1481-82 (Fed.Cir.1994) (finding the 1941 treaty which “released the United States from all liability for Texas land grant claims from Mexican citizens” was the government action giving rise to plaintiffs’ takings claims and triggering the running of the six-year statute of limitations). In the circumstances of this ease, it might be possible to toll the statute of limitations by showing that the United States somehow concealed its acts such that plaintiff was unaware of them or that the injury to plaintiff was “inherently unknowable” at the date the claim accrued. Cf. id. at 1482-83 (finding that while claimants alleged they had no way to know they could obtain relief from the United States until Mexico denied them relief, the treaty specifically extinguished their rights to seek compensation from the United States and plaintiffs were therefore aware of the action and its effects); cf. Achenbach v. United States, 56 Fed.Cl. 776, 779-80 (2003) (finding that takings claims against the Government for preventing American citizens living in the Philippines from traveling to the United States during World War II were time-barred because plaintiffs were aware of the harm at the time it occurred), aff'd, 112 Fed. Appx. 53, (Fed.Cir. 2004). Here, there is no allegation of concealment. The plain allegations of the complaint state that the government openly entered plaintiffs land in 1980. Compl. ¶¶ 10,11.
Although not addressed as an argument by plaintiff, the court has considered the possibility that there is an analogy between Ms. Kemp’s circumstances and those of the plaintiffs inBanks v. United States. See 314 F.3d 1304, 1310 (Fed.Cir.2003) (holding that mitigation efforts by the government rendered plaintiffs’ claims uncertain). The question before the court is whether in this ease the government took any action that would have dissuaded Ms. Kemp from bringing her claim within six years after December 22, 1980.
In this connection, the court has considered the text of Section 111(b) of Public Law 96-560, which states that, “[t]he Secretary of the Interior, with respect to lands added or transferred by this Act to Rocky Mountain National Park, ... may acquire lands and interests in such lands, by donation, purchase with donated or appropriated funds, or by exchange.” Act of December 22, 1980, Pub.L. No. 96-560, § 111(b), 94 Stat. 3265 (1980). Section 2201.1 of Title 43 of the Code of Federal Regulations sets forth the required elements for initiating an exchange, including a description of the lands involved and appraisals. 43 C.F.R. §§ 2201.1(c)(2), *824 (d) (2004). An agreement to initiate an exchange is not legally binding on either party. 43 C.F.R. § 2201.1(f) (2004). “Unless and until the parties enter into a binding exchange agreement, any party may withdraw from and terminate an exchange proposal or an agreement to initiate an exchange at any time during the exchange process, without any obligation to reimburse, or incur any liability to, any party, person or other entity.” 43 C.F.R. § 2200.0-6(a) (2004).
Ms. Kemp’s complaint, however, contains absolutely no suggestion that she has been persuaded by actions of the United States to delay in bringing this claim because the United States was undertaking actions which would eliminate the cause of the alleged taking. Here, the government was using plaintiffs land openly and continuously. Pl.’s Resp. at 2-3. The government’s open and continuous use of plaintiffs land distinguishes this case from cases involving exchange regimes in aid of the creation of, for example, Voyageurs National Park and Point Reyes National Seashore. Cf. Althaus v. United States, 7 Cl.Ct. 688, 693 (1985) (“Plaintiffs do not allege a discrete, disposi-tive act of the government, which would make it relatively clear if a taking has occurred.”); Hilkovsky v. United States, 205 Ct.Cl. 460, 504 F.2d 1112, 1115 (1974) (complaining only of the length of time the government took to acquire property and not of any particular physical invasion). In Al-thaus, unlike this case, there was no indication that the land was physically occupied. Althaus, 7 Cl.Ct. at 693. However, wide publicity about the intention of the government to include plaintiffs undeveloped property in Voyageurs National Park was noted by the court as having destroyed its value, thereby causing a taking to accrue. Id. at 695. Hilkovsky involved developed property; as in Althaus, no physical occupation of the property occurred. Id. at 1115. In this circumstance, the Hilkovsky court found no taking because a complaint over “the length of time that the government had been buying, trading for, or condemning theirs and others’ lands within the boundaries of the National Seashore” was not enough to establish a taking. Id. Here, however, plaintiff clearly alleges a physical taking beginning in 1980. Compl. ¶¶ 10-11. The court finds plaintiffs claim time-barred.
III. Conclusion
Because plaintiffs claim is time-barred, the court lacks jurisdiction to hear the action. Defendant’s motion to dismiss is GRANTED. The Clerk of the Court is directed to dismiss the complaint. No costs.
IT IS SO ORDERED.

. The Court disregards references to the ownership of the property by plaintiff’s mother because the property was owned by plaintiff at the time of the taking. Pl.’s Resp. at 2 (stating that plaintiff received title from her mother on December 23, 1977).

. Temporary and permanent regulatory takings "are not different in kind.” First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 318, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). Both require compensation. Id. at 318-19, 107 S.Ct. 2378. Liability for a temporary regulatory taking, like that for a permanent regulatory taking, is determined by applying the factors set forth in Penn Central. Appolo, 381 F.3d at 1351. In Appolo, the court could not find temporary takings liability for the uncertainty caused by the delayed regulation because the Penn Central analysis had already foreclosed a permanent takings claim. Id. at 1351-52 (rejecting a partial takings claim because lack of reasonable investment-backed expectations and an action protecting health and safety outweighed the economic injury).