**ROYAL MANOR, LTD., a Texas Limited Partnership, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–778C.

United States Court of Federal Claims.

Oct. 31, 2005.

David C. Burger, New York City, for plaintiff.

Kenneth M. Dintzer, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen for defendant.

## OPINION

FIRESTONE, Judge.

Pending before the court is a second motion to dismiss by the defendant, the United States ("government" or "United States"). In its motion, the government argues that the complaint by the plaintiff, Royal Manor, Ltd. ("plaintiff" or "Royal Manor"), should be dismissed under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") as untimely. The government contends that based on the court's opinion on the government's first motion to dismiss, the plaintiff's regulatory takings claim accrued more than six years prior to the filing of this lawsuit and therefore the claim is time-barred. 28 U.S.C. § 2501 (2000). For the following reasons, the government's second motion to dismiss is **DENIED**.

## BACKGROUND

The court previously fully recited the facts, taken from the plaintiff's complaint and accepted as true, in its April 8, 2005 Opinion on the government's motion to dismiss; only a brief recitation is necessary here. The plaintiff is a limited partnership under the laws of Texas. Royal Manor owned Royal Manor Apartments, a low-income housing development in Fort Myers, Florida.

Congress enacted Section 236 of the National Housing Act, Pub.L. No. 90–448, 82 Stat. 498 (1968) (codified as amended at 12 U.S.C. § 1715z–1) ("Section 236"), to encourage the construction, ownership, and management of housing for low and moderate income residents. The program provides an interest subsidy for mortgage loans from private lenders in exchange for the owners' agreement to restrictions on occupancy, rent amount, distribution of earnings, and eviction procedures. To participate, property owners were required to enter into both a regulatory agreement with the Department of Housing and Urban Development ("HUD") and a mortgage note with a private lender. HUD would contemporaneously enter into a contract of mortgage insurance with the private lender. The regulatory agreement was to remain in effect only so long as the mortgage insurance contract between HUD and the lender was in effect.

Royal Manor's mortgage note, the agreement with its private lender, provides in part:

> The debt evidenced by the Note may not be prepaid either in whole or in part prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner except where: (1) The prepayment is in connection with the release of an individual unit for sale to a lower income, elderly or handicapped person; o[r] (2) the maker is a limited dividend corporation which is not receiving payments from the Commissioner under a rent supplement contract pursuant to Section 101 of the Housing and Urban Development Act of 1965, and *the prepayment occurs after the expiration of 20 years from the date of final endorsement* ....

Pl.'s Ex. B (emphasis added).

Under this mortgage note and the regulatory agreement, Royal Manor would have been able to prepay its mortgage, thereby exiting the Section 236 program and terminating all the restrictions on the property on or about April 9, 1993, the twentieth anniversary of its participation in the program. Royal Manor alleges that it would not have entered the program had it not had this contractual right to prepay, and that if the statutory scheme had remained the same, it would have prepaid its mortgage pursuant to the contract after twenty years.

In the 1980s, Congress became concerned that large numbers of Section 236 program participants would exit the program upon expiration of their twenty-year prepayment anniversary dates and that the availability of

low-income housing would be greatly reduced. It therefore passed the Emergency Low Income Housing Preservation Act of 1987, Pub.L. No. 100–242, 101 Stat. 1815 (1988) ("ELIHPA") which placed a moratorium on mortgage prepayments without HUD's consent. In 1990 Congress enacted a permanent modification of the program, the Low Income Housing Preservation and Resident Homeownership Act of 1990, 12 U.S.C. §§ 4101–25 (1994) ("LIHPRHA"). However, Congress reinstated Royal Manor's contractual right to prepay its mortgage in 1996 when it passed the Housing Opportunity Program Extension Act, Pub.L. No. 104–120, 110 Stat. 834 (1996) ("HOPE Act").

Royal Manor filed a complaint seeking damages for breach of contract or compensation for a regulatory taking under the Fifth Amendment. The proceedings were stayed pending the final outcome in *Cienega Gardens v. United States*. *See Cienega Gardens v. United States*, 265 F.3d 1237 (Fed.Cir. 2001) ("*Cienega Gardens VI*"); *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir.2003) ("*Cienega Gardens VIII*"). On February 19, 2004, the plaintiff filed an Amended Complaint pursuing only its claim for a regulatory taking. On May 14, 2004, the government filed a 12(b)(6) motion to dismiss for failure to state claim, arguing that the plaintiff's claim was not ripe because the plaintiff failed to pursue all available administrative remedies. This court denied the government's motion on April 8, 2005, holding that pursuit of the administrative remedies would have been futile and thus

was not required in order to ripen the claim. The government then filed a second motion to dismiss on July 11, 2005. This time, the government contends that the plaintiff's claim accrued upon the passage of LIHPRHA in 1990, because that is when the claim ripened, and therefore the plaintiff's October 6, 1998 complaint was untimely.[1] The plaintiff in response argues that its claim did not accrue until it was unable to prepay its mortgage on its twentieth anniversary date in 1993, and therefore its 1998 complaint was timely. Oral argument was held on October 20, 2005.

## DISCUSSION

### A. Standard of Review

The government has filed a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6).[2] "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.... '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In other words, the issue is whether the plaintiff is "entitled to offer evidence to support the claims." *Id.*

---

**1.** Although the plaintiff's amended complaint refers to both ELIHPA and LIHPRHA, at the October 20, 2005 oral argument the plaintiff withdrew any claim that ELIHPA, which expired prior to the plaintiff's twentieth anniversary date on April 9, 1993, effected any taking of its property. Contrary to the government's assertions, the complaint's reference to ELIHPA in the context of alleging causation of financial loss, Compl. ¶¶ 32–33, is not a judicial admission that the plaintiff suffered economic injury prior to its twentieth anniversary date. All the complaint stated was: "ELIHPA and LIHPRHA interfered with Royal Manor's property interest and caused Royal Manor to sustain a serious financial loss ...." Compl. ¶ 33. This statement is far from an unequivocal concession that the plaintiff suffered damages prior to its anniversary date, and the court will not treat it as such.

**2.** Based on *Fisher v. United States*, 402 F.3d 1167, 1175 (Fed.Cir.2005), in which the Federal Circuit held that a non-frivolous allegation of jurisdiction based on a money-mandating constitutional provision or statute is sufficient to establish the court's Tucker Act jurisdiction to address the case on the merits, the court has construed the government's RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as an RCFC 12(b)(6) motion to dismiss for failure to state a claim. As the plaintiff alleges a claim under a money-mandating constitutional provision, the Takings Clause of the Fifth Amendment, the court has subject matter jurisdiction to address the merits of the plaintiff's claim.

## B. The Plaintiff's Complaint Was Timely

The government argues that according to the Federal Circuit, in order for a regulatory takings claim to become ripe, and therefore to start the "statute of limitations clock," three conditions must be satisfied: "(1) there had been a denial of economically viable use of the property as a result of the permit denial; (2) the property owner had distinct investment-backed expectations; and (3) the property interest taken was vested in the owner .... " *Bayou des Familles Dev. Corp. v. United States*, 130 F.3d 1034, 1038 (Fed. Cir.1997). The government contends that, based on the allegations in the plaintiff's complaint and on the holdings of this court in its April 8, 2005 opinion and of the Federal Circuit in *Cienega Gardens VIII*, the second two conditions were satisfied by the time LIHPRHA was passed, and that when LIH-PRHA was passed the plaintiff knew that economic use of its property had been prohibited. In such circumstances, the government argues, the plaintiff's claim ripened, and therefore accrued, upon the passage of LIHPRHA. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) ("[O]nce ... the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened."). The government further argues that based on this court's April 8, 2005 opinion, which held that HUD did not have discretion to relieve the plaintiff from the restriction imposed by LIHPRHA, the plaintiff's takings claim must have ripened upon passage of the statute.

In response, the plaintiff relies on two cases, *Franconia Associates v. United States*, 536 U.S. 129, 142–44, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002), and *Alder Terrace v. United States*, 161 F.3d 1372 (Fed.Cir.1998), for the proposition that its takings claim accrued on its anniversary date, in 1993. In both those cases, the plaintiff argues, the plaintiffs' claims were based on similar contracts and statutes at issue here and the court found that the claims accrued on the plaintiffs' anniversary date. The plaintiff argues that the court should follow those cases and find that the plaintiff's takings claim accrued on its twenty-year prepayment anniversary date. In its reply, the government contends that *Franconia* and *Alder Terrace* are not applicable here because those cases dealt with breach of contract claims, and not takings claims.

■ Although the court agrees with the government that a regulatory takings claim accrues at the same time that it ripens, the court agrees with the plaintiff that its takings claim both ripened and accrued on its twenty-year prepayment anniversary date. As with any other type of claim, a takings claim accrues within the meaning of 28 U.S.C. § 2501 (2000) "when all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action." *Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed.Cir.1994) (citing *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 373 F.2d 356, 358 (1967)). Accordingly, a regulatory takings claim will not accrue until the claim is ripe. *See Bayou des Familles*, 130 F.3d at 1038 (referring to the ripening of a takings claim as starting the "statute of limitations clock").

### 1. A Regulatory Takings Claim Is Not Ripe Until the Plaintiff Suffers Actual Economic Impact

Implicit in the government's statute of limitations argument is the assumption that in the case of a regulatory taking if exhaustion of administrative procedures is not required, such as here where HUD did not have discretion to authorize prepayment, then the taking accrues when the statute affecting the property is enacted. Thus, the government contends that, in this case, the plaintiff's claim that LIHPRHA effected a taking of its right to prepay its mortgage ripened upon passage of the statute. While the government's analysis may be correct in some cases, it is not correct in this case, where the impact of the statute is not immediate. As discussed below, the plaintiff's regulatory takings claim did not ripen until the plaintiff suffered actual economic injury. Here, the plaintiff did not suffer actual economic injury until the statute barred the plaintiff from prepaying its mortgage on the plaintiff's twenty-year prepayment anniversary date.

■ It is well established that an as-applied regulatory takings claim for economic damages does not ripen until there is a definitive position regarding how the statute will apply to the particular property in question:

> [A]mong the factors of particular significance in the [regulatory takings] inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (citations omitted). "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that *inflicts an actual, concrete injury.*" *Id.* at 193, 105 S.Ct. 3108 (emphasis added). Thus, an as-applied regulatory takings claim is not ripe until there is an actual or concrete injury to the plaintiff's property interest.[3] The court did hold that exhaustion of administrative remedies was not necessary to ripen the plaintiff's claim in this case because exhaustion would have been futile. However, this did not mean that LIHPRHA caused an immediate taking of the plaintiff's twentieth anniversary prepayment right upon passage in 1990, three years before the plaintiff was able to exercise that right. In contrast to the land use cases on which the government relies, in which enactment of the statute or regulation had an impact on the plaintiff's property immediately, here there was no impact on the plaintiff's property interest in its contractual right until the plaintiff's twentieth anniversary date.

As discussed below, until the twentieth anniversary date passed and the plaintiff was unable to exercise its prepayment right, the plaintiff did not suffer any concrete injury. Thus, until the plaintiff could exercise its prepayment right, the court could not evaluate the economic impact or the interference with investment-backed expectations. Therefore, the court's April 8, 2005 opinion, which held that application to HUD under § 4108 was futile and therefore not required in order to ripen the claim, did not necessarily mean that the plaintiff's claim ripened upon passage of LIHPRHA.[4]

### 2. Royal Manor Did Not Suffer Actual Economic Impact Until Its Twentieth Anniversary Date

■ In view of the foregoing, the plaintiff did not suffer actual economic impact until its twentieth anniversary date on April 9, 1993. Here, even assuming that the government is correct that the plaintiff had met two of the *Bayou des Familles* conditions for takings ripeness as of LIHPRHA's effective date, the plaintiff did not begin to suffer concrete injury—actual economic impact—until it was actually unable to prepay on its twentieth anniversary date. It was only then that the plaintiff began to suffer damages. *See Alder Terrace*, 161 F.3d at 1377 (holding that the plaintiff did not begin to suffer damages for breach of contract until its twentieth anniversary date).

The plaintiff alleges the taking of a contractual right. *See* Compl. ¶ 32 (referring to "Royal Manor's property interest in the contractual right to prepay and exit the HUD-

---

3. This is not to imply that the plaintiff's damages must be complete or fully known before the claim will be considered ripe. *See Fallini v. United States*, 56 F.3d 1378, 1382 (Fed.Cir.1995) ("[I]t is not necessary that the damages from the alleged taking be complete and fully calculable before the cause of action accrues."). In addition, although it is not at issue here, generally a plaintiff alleging a regulatory taking must also demonstrate that it has sought compensation through any procedures the State has provided for doing so before a regulatory takings claim will be considered ripe. *Williamson County*, 473 U.S. at 194, 105 S.Ct. 3108.

4. The government's reliance on footnote 4 of the court's April 8, 2005 opinion is misplaced. In that note, the court in distinguishing *Boise Cascade Corp. v. United States*, 296 F.3d 1339 (Fed. Cir.2002), a case involving a permitting requirement, noted that in this case, the "potential taking occurred" at the enactment of LIHPRHA, as opposed to at the conclusion of a permitting process. Contrary to the government's assertions, the court's recognition that the potential for a taking existed at the time LIHPRHA was enacted does not amount to a holding, or even an implication, that the takings claim in this case also ripened and accrued at that time.

regulated housing program"). The contractual right that was allegedly taken by operation of LIHPRHA was not simply a right to prepay; it was the right to prepay *on a date certain: the twentieth anniversary date.* It was only on the twentieth anniversary date that, but for the statute, the plaintiff would have been able to prepay, exit the program, and either charge fair market rental rates or sell the property and invest its money elsewhere. *See Cienega Gardens VIII,* 331 F.3d at 1342 (comparing the Model Plaintiffs' rate of return under LIHPRHA and their potential rate of return with other investments in evaluating economic impact). Prior to that date the plaintiff was independently bound by its contract to charge lower rental rates and to remain in the program, and thus the statute denied no economically viable use and had no actual economic impact.[5] As the Federal Circuit determined in *Cienega Gardens VIII,* "[w]hether or not there was a compensable taking ... depends on whether, after twenty years, a program participant was not allowed to prepay its mortgage and, as a result, suffered a financial loss during the years when ELIHPA and LIHPRHA were in effect." 331 F.3d at 1340–41.[6]

It is for this reason that the government's position must be rejected. According to the government, the plaintiff's takings claim ripened upon passage of LIHPRHA in 1990, three years before the plaintiff was eligible to exercise the right to prepay its mortgage. If the plaintiff had filed its claim in 1990, before LIHPRHA actually had an impact on its rental income, the court would have had no market data on which to base an evaluation of economic impact, as the market to be considered would have been three years in the future. Moreover, under the government's theory, any Section 236 program participants whose twenty-year prepayment anniversary dates occurred after LIHPRHA was repealed by the HOPE Act in 1996 would have had ripe regulatory takings claims in 1990. Thus under the government's theory, these participants conceivably could have been compensated for their claims that LIHPRHA took their contractual rights to prepay their mortgages on their twentieth anniversary dates even though LIHPRHA was repealed prior to those anniversary dates.

Such results plainly would be inconsistent with regulatory takings ripeness doctrine, which, as discussed above, seeks to ensure that a takings plaintiff has suffered concrete injury. Because the plaintiff did not suffer concrete injury and the court would not have been able to determine whether there was a compensable taking until the plaintiff's prepayment date, the plaintiff's takings claim did not ripen until that time. The plaintiff's takings claim therefore accrued on its twentieth anniversary date, April 9, 1993. *See Bayou des Familles,* 130 F.3d at 1038. The plaintiff's complaint, filed October 6, 1998, is therefore timely.

## CONCLUSION

For the foregoing reasons, the government's second motion to dismiss, filed July 11, 2005, is **DENIED.** The parties shall file a joint status report by **Thursday, December 1, 2005** detailing the next steps in the litigation.

**IT IS SO ORDERED.**

---

[5] The government's argument that some theoretical economic injury might have occurred upon passage of LIHPRHA is misplaced. As discussed above, the ripeness doctrine in the regulatory taking context is concerned with ensuring that the court is able to determine the extent of the taking at the time a plaintiff brings suit. Therefore, to hold that the plaintiff's claim was ripe before the plaintiff was actually prevented from exercising its contractual right to prepay, based on a merely theoretical injury, would be inconsistent with the doctrine.

[6] In *Cienega Gardens VIII,* some of the plaintiffs' twentieth anniversary dates may have fallen between 1988 and 1990, when ELIHPA was still in effect. ·